Cross v. State.

# BEN CROSS v. THE STATE.

## (*Jackson.* April Term, 1920.)

1. **CRIMINAL LAW.** Confession induced by hope or fear incompetent.
   A confession not made freely or voluntarily, but induced by hope or fear, is not competent evidence against the accused. (*Post, pp.* 511, 512.)

   Cases cited and distinguished: Deathridge v. State, 33 Tenn., 79; Strady v. State, 45 Tenn., 307; Self v. State, 65 Tenn., 253.

2. **WITNESSES.** Accused cannot be cross-examined as to incompetent confession for purpose of impeachment.
   Defendant in criminal prosecution who is witness in his own behalf cannot be compelled on cross-examination to testify to statements made out of court which amount to a confession of a crime, where such statements were induced by hope or fear, even though offered, not as a confession, but merely for the purpose of impeaching the witness. (*Post, pp.* 512-516.)

   Cases cited and distinguished: Harrold v. Oklahoma, 169 Fed., 47; People v. Yeaton, 75 Cal. 415; Shepherd v. State, 88, 185.

3. **CRIMINAL LAW:** Statement by accused on committing trial that he was guilty incompetent where no warning.
   It was error to permit a justice of peace to testify that he had read the warrant to the defendant when the committing trial was called and asked him whether he was guilty or not guilty and that defendant had said that he pleaded guilty, where the justice had not complied with Thomp. Shan. Code, secs. 7008-7010, 7015, 7016, requiring magistrate to inform accused of his right to make a statement, aid of counsel, etc. (*Post, pp.* 516-519.)

   Case cited and approved: Nelson v. State, 32 Tenn., 237.

---

### FROM LAUDERDALE.

---

Error to the Circuit Court of Lauderdale County.
—Hon. R. B. Baptist, Judge.

W. W. Craig, for plaintiff in error.

W. H. Swiggart, Jr., Assistant Attorney-General,
for the State.

Mr. Justice McKinney delivered the opinion of the
Court.

The plaintiff in error, Ben Cross, was indicted and
convicted of murder in the first degree, and the jury
fixed his punishment at twenty-one years in the State
penitentiary. He has appealed to this court, and has
assigned errors.

On the trial of the case the State undertook to prove
that the plaintiff in error, before the trial, had made a
written confession of his guilt. In the absence of the
jury the court heard the evidence as to said alleged
confession, and it appearing that said confession was
not made freely and voluntarily, but was induced by
hope or fear, the court, very properly, held that the
evidence as to the confession was incompetent.

In *Deathridge v. State, v Sneed*, 79, this court said:
"But if the confession be the result of hope or fear,
induced or incited by a person having power over the
prisoner, it becomes incompetent; for, in such case, it
can have no tendency to prove that the prisoner is
guilty of the crime."

In *Strady v. State*, 5 Cold., 307, the court said:
"But a confession forced from the mind by the flattery
of hope or the torture of fear, comes in such a ques-

tionable shape, when it is to be considered as the evidence of guilt, that no credit ought to be given to it; and, therefore, it is rejected."

In *Self* v. *State*, 66 Baxt., 253, it was said: "But unless confessions are made freely and voluntarily, without the influence of hope or fear, they are not received as competent evidence."

The State, in its cross-examination of the plaintiff in error, over the objection of his counsel, was permitted by the court to ask him if he had not made a written statement to which he replied that he did not remember making it. He was then asked, over the objection of his counsel, if he did not make the oral statements admitting his guilt of the murder committed in the manner detailed in the written confession, and replied that he did not remember making such statement.

The trial judge admitted this evidence as an impeachment of the witness, and in rebuttal, over his objection, permitted the witnesses Wood and Rice to testify that he made said confession to them.

This action of the trial judge is assigned as error, and we think both upon principle and authority this evidence was incompetent and highly prejudicial to the plaintiff in error. The effect of its admission was to permit the State to prove indirectly what the court had held it could not prove directly. We are unable to understand how evidence which is entitled to no credit, and which does not tend to prove the guilt of the prisoner, can be competent for the purpose of contradicting statements made by the accused on the

witness stand.   If the statements drawn from the ac-
cused, while in custody, by the flattery of hope, or by
threats, are entitled to no credit as being truthful
statements of what occurred, by the same parity of
reasoning such statements can have no force as con-
tradictions of the testimony of the plaintiff in error
on the witness stand.   The same reasons which forbid
their admissibility in the one instance would make
them incompetent in the other.   It would certainly be
unjust to impeach a witness by testimony which had
been wrongfully obtained.   The exclusion of the con-
fession by the court was, in effect, holding that the
same had been improperly obtained.   If it were thus
obtained—that is, by force, or by threats, or by in-
fluence of hope—it was not the free voluntary state-
ment of the accused, and it would be most cruel to
say that the witness is discredited, and that he is not
entitled to be believed because of the confession made
by him under such circumstances.

In *Harrold* v. *Oklahoma,* 169 Fed., 47, 94 C. C. A.,
415, 17 Ann. Cas., 868, Judge SANBORN, in a very able
opinion, in which the authorities are reviewed, says:
"A person charged with crime, shall at his own re-
quest, but not otherwise, be a competent witness and
his failure to make such request shall not create any
presumption against him nor be mentioned at the
trial.

"Now the confession of this defendant was incompe-
tent evidence against him.   Did the fact that he
availed himself of the privilege accorded to him by
this statute make it competent?   If so, did that fact

3ᵃ—142 Tenn.]

make all incompetent evidence admissible against him? Did it make the confession and all other facts tending to establish his guilt provable against him by hearsay? Did it make his disclosure regarding his guilt if any, to his attorney for the purpose of his defense, admissible in evidence against him? All these questions must be answered in the negative, because the reason of the rule, and, therefore, the rule itself, apply with at least as much force to an involuntary confession after, as before, it is denied by the testimony of the accused. When it is offered by the prosecutor in chief, it is incompetent evidence to overcome the simple presumption of the defendant's innocence, because it is unworthy of belief. It cannot be more worthy of belief, or more competent to overcome both that presumption and the testimony of the defendant, after he has denied that he ever made it." (Citing authorities.)

"The privilege granted to an accused person of testifying on his own behalf would be a poor and useless one indeed if he could exercise it only on condition that every incompetent confession induced by the promises, or wrung from him by the unlawful secret inquisitions and criminating suggestions, of arresting or holding officers, should become evidence against him."

In *People* v. *Yeaton,* 75 Cal., 415, 17 Pac., 544, the holding of the court is succinctly contained in the syllabus (75 Cal.), which is as follows:

"The defendant in a criminal prosecution, who is a witness in her own behalf, cannot be compelled, on cross-examination, to testify to statements made by

her out of court, which amount to a confession of the crime, unless it be first shown that the confession was voluntary. And this is so, although the evidence be offered by the prosecution, not as a confession, but merely as contradictory statements, for the purpose of impeaching the witness.''

In *Shephard* v. *State*, 88 Wis., 185, 59 N. W., 449, the court said:

''The confession was rejected because it was extorted. It was unfair to the accused, and should not be proved against him, and is condemned by the court and ruled out. When the defendant was asked if he made that confession and denied it, the same witnesses who extorted the confession, and whose testimony was disallowed on that account, are allowed to testify to the confession, however wickedly and wrongly it was obtained, on the exceedingly narrow theory · that it is not admitted as a confession, but merely to contradict the witness. The confession is allowed to go to the jury, and have its effect in convincing the defendants, and override the ruling of the court that it was inadmissible as evidence against him, for such a petty reason. The confession is just as objectionable as evidence, and as incompetent and hurtful, when offered in one way as in another. If no other evidence on the ground of contradicting the defendant as a witness could be found, he had better have gone uncontradicted than that his legal rights as a prisoner should be so violated and his conviction obtained by such unlawful testimony. The object is to get the confession in evidence. It cannot be done directly, but it can

be done indirectly. It cannot be used to convict, but it can be used to contradict, the defendant, and in that way it is used to convict him all the same. We cannot adopt such a principle or practice in the administration of criminal law. It is unreasonable as well as unjust.''

In Greenleaf on Evidence (15 Ed.), vol. 1, section 449, it is said: ''It is a well-settled rule that a witness cannot be cross-examined as to any fact, which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony.'' (Citing authorities.)

We therefore hold that the trial court was in error in permitting the state to cross-examine the witness as to said alleged confession.

It is further assigned as error: ''That the trial court erred in admitting the testimony of N. W. Barbour, the justice of the peace who held the committing trial, to the effect that he had read the warrant to the defendant, when the committing trial was called and asked him whether he was guilty or not guilty and that the defendant had said that he pleaded guilty.''

As to this incident Mr. Barbour testified as follows: ''That when the case was called, he read the warrant to him (the defendant) and called his attention to the fact that he was charged with murder in the first degree and asked him what his plea was and he said he was guilty.

''When this warrant was read to Ben Cross, he was not represented by counsel, and W. W. Craig, a member of the Ripley Bar, being present in court upon another matter, arose and stated to the court that

the defendant was entitled to have counsel appointed to represent him in this matter, if he wanted it, and to have the advice of counsel in the matter and thereupon the court appointed the said W. W. Craig to represent the defendant, and after consulting with the defendant, the case was proceeded with, the State witnesses were examined, some exceptions were made by defendant's counsel to the testimony and the paper writing which the State sought to introduce was excepted to by the defendant to the extent that it was excluded by the court and the cause was conducted by the defendant's counsel in his defense from then on as any other cause; and that he could not state whether Ben Cross understood the nature and extent of the charge against him nor what his plea meant and did not know whether he simply meant to admit that he had shot Luther Hartsfield or what he meant by his plea of guilty."

The plaintiff in error, Ben Cross, testified as follows: "When I was brought to trial before the magistrate, he read some sort of a paper to me and asked me if I was guilty, and I thought he meant to ask if I was guilty of killing Mr. Hartsfield, and I replied that I had shot Mr. Hartsfield, but I did not understand that I was admitting that I did it without any justification.  Mr. Craig told the court that I was entitled to have counsel to advise me, and the court appointed him to represent me, and, after he had talked with me, he went ahead and fought the case for me."

There are several provisions of Thompson's Shannon's Code setting forth the duties of the committing magistrate in a case of this nature as follows:

"Sec. 7008. When the defendant is brought before a magistrate upon arrest, either with or without warrant, or a charge of having committed a public offense, the magistrate shall immediately inform him of the offense 'with which he is charged, and of his right to aid of counsel in every stage of the proceedings.

"Sec. 7009. The magistrate shall allow the defendant a reasonable time to send for counsel, and, if necessary, shall adjourn the examination for that 'purpose.

"Sec. 7010. The magistrate shall, as soon as may be after the defendant appears, or, if the defendant require the aid of counsel, after waiting a reasonable time therefor, proceed to examine the case."

"Sec. 7015. At the examination, the magistrate shall examine the witnesses for the prosecution, on oath, in the presence of the defendant and such other witnesses as may be produced by the defendant.

"Sec. 7016. When the examination of the witnesses on the part of the state is closed, the magistrate shall inform the defendant that it is his right to make a statement in reference to the charge made against him, or that he may waive the same; and such waiver cannot be used against him on the examination before the magistrate or on trial."

In *Nelson* v. *State,* 2 Swan, 237, and *Alfred* v. *State,* 2 Swan, 581, it was held that the magistrate must advise the defendant of his rights, and warn him that statements, made by him can be used against him on the trial in the circuit court before they can be introduced against him.

From the foregoing it is apparent that the magistrate did not follow the mandate of the statute above

quoted. Hence his testimony that the plaintiff in error said that he was guilty was incompetent.

It is conceded by the State that if the evidence, which we hold was incompetent, is excluded, a case of first degree murder has not been made out.

Since the case will have to be reversed and remanded for a new trial, we refrain from commenting upon the facts of the case.