## GILES *v.* STATE.

*(Knoxville,* September Term, 1947.)

Opinion filed November 29, 1947.

J. RALPH TEDDER, of Rockwood, and DANNEL & FOWLER, of Loudon, for plaintiff in error.

NAT TIPTON, Ass't Atty. Gen., for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

Defendant appeals from conviction of voluntary manslaughter and sentence to a maximum term of two years in the penitentiary for the offense.

Defendant is a simple, uneducated man, a tenant farmer who killed his landlord, R. L. McTeer, as a result of a quarrel over the division of a crop of hay. The present record presents the second trial of the case and the defendant is the only eyewitness who testifies to the details of the homicide. The credibility of the defendant is, therefore, the vital factor which establishes guilt or innocence.

Immediately after the homicide, the defendant was arrested by the Sheriff of the County, and taken before a Justice of the Peace, Squire W. S. WATKINS, who was an acquaintance of the defendant and whose niece had married defendant's brother. No warrant had been sworn out and no charge preferred against defendant, but the Magistrate questioned the defendant and heard his statement of how the homicide occurred. Thereafter he required the defendant to make bond. This proceeding took place on the day of the homicide and after it occurred. Some weeks later a formal charge was made against the defendant, a warrant was sworn out for him and his preliminary examination had before another Magistrate and not Squire WATKINS.

On the present trial, Squire WATKINS was called to testify for the State, and over the formal and specific objection of defendant's counsel he was permitted to do so. He testified positively that prior to his questioning of the defendant that neither he nor the Sheriff had advised defendant of his constitutional rights, that he was entitled to counsel, or warned him that he did not have to make a statement, or that if he did make a statement that the statement might be used against him on a subsequent

trial. Over the objection of the defendant, Squire WAT-KINS was permitted to repeat the statement made to him by the defendant and that statement was materially different from the statement made by the defendant on the stand. The statement may have prejudiced the minds of the jurors against the defendant either by showing that the homicide was the result of deliberation or by affecting the credibility of the defendant and impeaching his entire testimony. We think that the undisputed fact of how the statement was obtained by the Magistrate made it inadmissible, and its admission over defendant's objection, constitutes reversible error.

Our examination of the record shows that the defendant is a simple, unlettered man who had no appreciation of the niceties of the distinctions between the various degrees of homicide and consequent criminal liability. We have no doubt that had counsel advised defendant, he would never have made the statement that after being threatened by the deceased with a pitchfork, he had gone to his home and secured his gun. It is a fair inference that this statement which was not made by him when he testified on the stand, led to his conviction.

No lengthy review of our authorities is necessary to decide this case. It is sufficient to say that no right secured to an accused person under our bill of rights has been more zealously guarded by the Courts than those preserved to him under Article 1, sec. 9, of the Constitution. Those rights pertinent to the present case are carried into the Code as sections 11547-11549, 11555, 11557 and 11733. It will be observed that Code sec. 11547 provides that when the defendant is brought before a magistrate *upon arrest, either with or without warrant,* etc.,'' the Magistrate shall immediately inform the accused of the offense with which he is charged and of his right to aid

of counsel in every stage of the proceedings, and section 11555 provides that the Magistrate shall inform the accused that he may make a statement but need not make one, with the inference that if he does make a statement that it may be used against him in a subsequent prosecution.

In *Polk et al.* v. *State*, 170 Tenn. 270, at page 274, 94 S. W. (2d) 394, this Court said, in reversing a conviction for similar error: ''But a more serious question is presented as to the competency of the confessions before the justice of the peace. The record discloses that the prisoners were not advised by the justice of their right to counsel, were not warned that any statements that they might make could be used against them, and the justice of the peace took no steps whatever to protect the rights of the prisoners before him. All the record discloses is that the justice of the peace did not warn the prisoners, but that the sheriff himself stated to the prisoners, in the presence of the Magistrate, that any statements which they made would be used against them, but, if they wanted to, they could make a statement in their own behalf. . . . We hold that the alleged confessions before the justice of the peace were improperly admitted in evidence, and, of course, such confessions are highly prejudicial.'' 170 Tenn. at page 276, 94 S. W. (2d) at page 396.

Squire WATKINS testified that the defendant did not voluntarily make the statement of the details of the homicide to which the Squire testified and that the account was elicited from the defendant by the questioning of the Squire. The Court may properly consider that because of the personal acquaintance and friendship existing between the Justice of the Peace and the defendant, that the defendant told his story to the Squire as a friend rather than as a Magistrate. Even slaves have enjoyed the pro-

tection of this Court under such circumstances. *Nelson* v. *State,* 32 Tenn. 237; *Alfred* v. *State,* 32 Tenn. 581. Both of these early decisions were approved in *Cross* v. *State,* 142 Tenn. 510, 221 S. W. 489, 9 A. L. R. 1354.

The State admits frankly that it had difficulty finding authority to support the admission of this evidence. A single case, *State* v. *Conrad,* 95 N. C. 666, is cited, but we do not find it controlling or even persuasive since it was decided under a constitution and statute different from ours, and which permitted a distinction in proceedings before a Magistrate before and after the formal return of the warrant of arrest. Our statutes permit no such distinction. That the difference is material is evident from the following statement in the Conrad opinion: *"The commencement of the examination is properly, when, after the warrant of arrest is returned executed,* the accused is present before the magistrate . . ." (95 N. C. 666, at page 669) (Italics ours.)

On the other hand, our Code provides sec. 11547: *"When the defendant is brought before a Magistrate upon* arrest, *either with or without warrant* . . . the Magistrate shall immediately inform him . . . of his right to aid of counsel in every stage of the proceedings." (Italics ours.)

In a case such as the present one no fine or technical distinction should be made to deprive the accused of his right to the aid of counsel and to a complete understanding that if a statement be made, it may be introduced in evidence against the accused in a subsequent criminal prosecution. *Alfred* v. *State, supra;* Code secs. *supra.*

For the reasons stated we find it necessary to reverse the judgment and remand the case for a new trial.

All concur.