GERARD ROSENTHAL

*v.*

STATE OF TENNESSEE

*(Nashville,* December Term, 1955.)

Opinion filed April 5, 1956.

Rehearing Denied June 8, 1956.

WILKES & HAYNES and GWINN & GWINN, Memphis, for plaintiff in error.

NAT TIPTON, Advocate General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Gerard Rosenthal was indicted for the homicide of Richard Carter, was found guilty of murder in the first degree and sentenced to death by electrocution, from which he has appealed.

■ There are eleven assignments of error, the first two of which are respectively no evidence to support the verdict and that the evidence preponderates against the verdict of guilty and in favor of the innocence of the defendant.

We have reviewed the evidence under these two assignments and have overruled them. Same is filed with the Clerk of the Supreme Court, but need not be included for publication of this opinion.

The third assignment of error is that "the constitutional rights of defendant were violated by holding him incommunicado for six days after his arrest, conducting a preliminary hearing in the private office of Inspector Wiebenga instead of in the Court room, and denying him access to counsel during that period of time; this interference with his constitutional rights, including his arraignment in the second division of the Criminal Court in the absence of counsel employed by him and known to be representing defendant by the public prosecutors."

Counsel did not see fit to discuss this assignment and the only Tennessee cases cited are inappropriate. *Giles v. State,* 185 Tenn. 429, 206 S.W.2d 412, was where a confession was ruled inadmissible in evidence because the accused had been questioned by a magistrate whom he considered to be questioning him simply as his friend, and he answered the questions that the magistrate asked him. *Poindexter v. State,* 183 Tenn. 193, 191 S.W.2d 445, was a case where, after counsel was appointed for

an indigent prisoner, he was given only ten minutes in which to prepare his defense, which of course, was held to be inadequate. The case of *Woods v. State,* 99 Tenn. 182, 41 S.W. 811, which is cited as 199 Tenn. erroneously, does not touch any question involved in this assignment.

In *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332, this Court has held that the investigating officers may detain a suspect for a reasonable length of time, 72 hours in the case cited, for the purpose of making an investigation, pointing out that in the Ashcraft case it was not the detention of the defendants for 36 hours, but was the mistreatment they received which caused the Supreme Court, *Ashcraft v. State of Tenn.,* 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192, to hold that the confession obtained under those circumstances was inadmissible. See, also, the case of *East v. State,* 197 Tenn. 644, 277 S.W.2d 361. There is no claim to any physical mistreatment in this case.

■ The only showing at all on the question of whether he was denied the right to counsel is the defendant's own affidavit for the purpose of the motion for a new trial. But the police officers testified that he said that he did not want to employ private counsel, that the defendant said that he did not want an attorney at that time but that he would be defended by the Public Defender. The Trial Judge settled that question so far as we are concerned when he overruled the applicable grounds of the motion for a new trial. As a matter of fact the record reflects that the Public Defender and the City Judge Boushe did see to it that a plea of not guilty was entered for him.

■ It is not shown in any way that the defendant was prejudiced by anything that was done and it is not

amiss to note that in *Steele v. State,* 189 Tenn. 424, at page 432, 225 S.W.2d 260, this Court said that there is no obligation on the part of the Trial Court to appoint counsel for one charged with a crime until arraignment on the formal charge against him because it is only when the indictment is returned that it can be ascertained that such person will be charged with crime and entitled to appointment of counsel. Defendant's counsel suggest that they would have filed a petition for writ of *habeas corpus* if they had known he was being detained; however, it is purely speculative as to whether or not such would have been effective and we cannot assume that it would have been effective.

The fourth assignment is that the Trial Court erred in allowing the former District Attorney General John Heiskell, who was still in office when the indictment was returned, to testify that no promises were made to Tuzzo and that his statements were corroborated. The record failed to show that there was any objection to this testimony and any exception preserved with reference to it or made a ground or a motion for a new trial. It is not therefore available to the defendant on this appeal. Moreover, in reading the record we think that when the Attorney General made the statement that Tuzzo's statement was corroborated, his attention was directed more to the statement of Tuzzo as to where the gun was concealed in the woods near Tunica, which statement was in truth later corroborated because the gun was found there.

This assignment is overruled.

By the fifth assignment of error complaint is strenuously made that the Court erred in failing to declare a mistrial when the Assistant Attorney General

stated in the presence of the jury that it was a frame-up when counsel for plaintiff in error and the expert witness Raney were in the act of trying to make a demonstration before the jury.

It must be conceded that the Assistant Attorney General was entirely out of order in making such remark and that he deserved the reprimand given him by the Court and that defendant's counsel had adequate reason to be incensed personally at such an accusation. The record shows, however, perfectly clearly that the Trial Judge immediately excluded the jury and that a number of jurors testified they did not hear the remark and they wondered why the Judge had excluded them from the room. It seems that the lawyers immediately engaged in quite a confused wrangle and babel of voices among themselves but no juror testified he heard the remark and they obviously did not understand what was occurring, so we are unable to see where the defendant was prejudiced in any way.

The assignment must, therefore, be overruled.

By the sixth assignment complaint is made of the failure of the Trial Court to grant the new trial for newly discovered evidence. This evidence consisted of the affidavit of a 17-year-old girl who lived down in Mississippi, and with whom Tuzzo was acquainted and had had some dates. She says she came to Memphis and visited Tuzzo in jail and that he told her that the defendant and he did not plot the murder of deceased, and that Tuzzo told her that Rosenthal told Tuzzo that it was an accident.

It is true that this girl came up to Memphis to see Tuzzo while he was in jail but it appears from the record

that she stayed at a second-rate hotel and while there the police of Memphis paid her a call in her room and they testified that there was a man in the room with her at that time.

Defendant relies on *Taylor v. State,* 180 Tenn. 62, 171 S.W.2d 403, in which case there was a prosecution for unlawful intercourse with a girl under the age of consent, and the defense was that she was unchaste and a bawd and lewd woman within the meaning of the statute. The Court there held that there was a showing of reasonable diligence, that these two new witnesses were not available at the time of the trial, and the offered evidence was not merely cumulative or of an impeaching nature, but was such that their testimony would probably bring about a different result because they proposed to testify that each of them had had intercourse with this girl.

We do not think the Court erred in refusing to grant a new trial for two reasons. It appears that this interview took place on January 30, 1955, while both Tuzzo and Rosenthal were in the Shelby County jail and that the trial occurred on March 14 thereafter. To put it mildly, it is passing strange that this girl knew Rosenthal, as the record reflects she did, and she acquired this valuable information from Tuzzo, but did not impart same to Rosenthal or his two lawyers. So far as the record shows there was no showing of diligence by the defendant or his counsel as is required under *Ross v. State,* 130 Tenn. 387, 170 S.W. 1026. This Court held in *Gentry v. State,* 184 Tenn. 299, 198 S.W.2d 643, 648, that a new trial was properly refused where the newly discovered evidence purported to show that a material witness of the State had committed perjury in his testimony at the trial, quoting from 39 Am.Jur., New Trial,

Section 167, p. 173: " 'It is well settled that a new trial will not be granted upon the ground of newly discovered evidence where it appears that such new evidence can have no other effect than to discredit the testimony of a witness at the original trial, contradict a witness's statements, or impeach a witness, unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness so strong and convincing, that a different result must necessarily follow. * * *' "

The State cites to the same effect, 16 C.J., p. 1205, Section 2730, in part as follows: "The trial court has the right to determine the credibility of newly discovered evidence for which a new trial is asked, and if the Court is satisfied that, on a new trial, such testimony would not be worthy of belief by the jury, the motion should be denied. The newly discovered evidence will not be accepted as ground for a new trial unless the Court can see that its admission on a new trial will probably produce a result more favorable to defendant than the verdict on the original trial. The question is not what the jury might do, but, supposing all the evidence new and old to be before another jury, whether they ought to return a verdict more favorable to defendant than the one returned on the original trial." See also 23 C.J.S., Criminal Law, sec. 1461.

It is insisted by the defendant that this offered testimony is of so serious a nature as would probably change the result. We do not think there is any merit in this insistence, first, because under defendant's assignment of error No. 10 complaining of the failure of the Court to charge on circumstantial evidence it is said that the testimony of Tuzzo was so thoroughly discredited that it

did not constitute substantial evidence and with that eliminated the conviction rested solely on circumstantial evidence. So if Tuzzo was already so thoroughly discredited, how can it be said that the result would probably be different if he were again discredited still further by this girl's testimony?

Secondly, even though Tuzzo was impeached, the defendant was likewise impeached and the jury was warranted in believing that the testimony of Tuzzo was corroborated by the other evidence in the case, and that the testimony of the defendant was not so corroborated.

The assignment, therefore, must be overruled.

The seventh assignment of error is based solely upon the affidavit of one juror to the effect that another juror, whose name he did not know and whom he could not otherwise identify, had stated in the presence of the affiant that owing to the prejudice he held against Jews, he was going to try to lean over backwards in the case. It appears that on the voir dire examination each and every juror, when asked about prejudice against Jews, stated that he was not so prejudiced.

This Court is requested to reverse this case on the theory that the defendant did not have a fair and impartial trial guaranteed to him by the Constitution of this State. It will be readily conceded by everyone that an accused person is entitled to be tried by a jury of unbiased and impartial jurors. However, we have this situation. One juror out of 12 makes oath that some other juror whom he was unable to identify has admitted his prejudice against Jews. It must be assumed that if any other juror had heard the statement that such would have been made to appear by affidavit and by putting

the juror on the stand for cross-examination. It is also settled by the case of *Rader v. State,* 73 Tenn. 610, that any juror who is accused of bias or prejudice is entitled to take the stand for the purpose of refuting such a charge. Here, the affiant is unable to name or identify this mysterious Mr. X and to give him an opportunity to affirm, deny or explain whatever statement he may have made.

The law is well settled that upon a motion for a new trial the findings of the Trial Judge are entitled to the weight of the verdict of the jury and will not be disturbed where there is material evidence to support his finding. *Thomas v. State,* 109 Tenn. 684, 75 S.W. 1025, which is cited in *Lindsey v. State,* 189 Tenn. 355, 225 S. W.2d 533, 15 A.L.R.2d 527.

The Trial Judge had before him the response of each juror on the *voir dire* examination that he had no prejudice against Jews. This is material evidence to support the finding of the Trial Judge and we, therefore, will not reverse. The assignment is overruled.

The eighth assignment complains of that portion of the Court's charge in dealing with the theory of defendant where the Court failed to charge the jury that if they had a reasonable doubt as to the theory of the defendant, it would be their duty to acquit. *Frazier v. State,* 117 Tenn. 430, 100 S.W. 94, is relied on in support of this assignment.

In our opinion any resemblance between the situation existing in that case and the present case is purely coincidental. We have no fault to find with the law as declared in that case with particular reference to the summary 117 Tenn. on pages 464 and 465, 100 S.W. on page 103. However, examination of the opinion will

disclose that the Judge gave a lengthy charge as to the theory of the State and of the accused, but as said in 117 Tenn. on page 463, 100 S.W. on page 102 of the opinion, nowhere was any reference made to the doctrine of reasonable doubt except concluding sentence to this long charge, where a brief general statement of 6-½ lines was made with reference thereto, but without the Court having in any way related the doctrine of reasonable doubt to the parts of the charge where the same would be applicable.

On the other hand, in the instant case the Court fully charged on reasonable doubt except in respect to the above omission. We think that this omission was nothing more than meagerness in the charge and that it was the duty of counsel to offer a special request and having failed to do so, they cannot now complain of same. *Turner v. State,* 188 Tenn. 312, 219 S.W.2d 188. This assignment is overruled.

By the ninth assignment of error complaint is made of the charge of the Court herein in substance, the Court charged that the law presumes true any statements the accused has made against himself, whereas any statements made in his own behalf may be considered by the jury as either true or false as they may see fit.

This same assignment of error is dealt with by Judge Burnett in the case of *Espitia v. State,* 199 Tenn. 696, 288 S.W.2d 731, in which this Court held that such a charge is erroneous and that case was reversed.

It appeared, however, in that case that the accused had made admissions against his interest, whereas in the present case there is no evidence of any single instance where the defendant has made any admissions

against his own interest; every statement he has made has been self-exculpatory. It is, therefore, not relevant to the evidence in the case, is a mere abstraction, and is not reversible 'error in the absence of any showing of prejudice, of which there is none. The assignment is overruled.

The tenth assignment complains of the failure of the Court to instruct on circumstantial evidence. This is based on the assertion that since the testimony of Tuzzo is alleged to be so thoroughly discredited that nothing else is left on which to rest the judgment except circumstantial evidence. We find no merit in this complaint. The jury was the judge of and has settled the question of the credibility of Tuzzo and all other witnesses. The assignment is overruled.

Assignment of error No. eleven is a sort of trammel net assignment covering eleven separate items, some of which have already been ruled on adversely in this opinion and others ruled on adversely by the Trial Court on a motion for a new trial. The insistence is that the accumulative effect was such as to deprive the defendant of a fair trial in violation of the Fourteenth Amendment to the Federal Constitution, and Article I, Section 9, of the Constitution of Tennessee. We find no merit in this assignment and same is overruled.

Let the judgment below be affirmed. It results that defendant will be committed to the Warden of the State Penitentiary and executed as the law directs on June 5, 1956.