**STATE of Tennessee, Appellee,**

v.

**Paul H. ROGERS, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 28, 1985.

Permission to Appeal Denied by Supreme Court Sept. 30, 1985.

W.J. Michael Cody, Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, Stephen M. Bevil, Asst. Dist. Atty. Gen., Chattanooga, for appellee.

Jerry H. Summers, Chattanooga, for appellant.

## OPINION

WALKER, Presiding Judge.

In two cases tried together, the defendant, Paul H. Rogers, was convicted of (1) rape of his 23 year old daughter, Angelia Kay Clinton, and of (2) committing incest with her. He was sentenced to six years' imprisonment, six months to be served in continuous confinement in the Hamilton County penal farm and the balance of five and one-half years suspended for the offense of incest. The trial judge granted a new trial on the rape charge.

The victim, Angelia Kay Clinton, testified at trial that her father, the defendant, Paul H. Rogers, came to her trailer Saturday morning, October 15, 1983, to repair the locks and while there committed rape and incest. At the time she was wearing a man's T-shirt and panties. She tried three times to get up but could not, according to her trial testimony. After the rape she went to a friend's house, leaving one of her two children in the trailer with her father. She and her friend later returned to the trailer and her father left.

The victim admitted she did not notify police until Sunday afternoon when she was examined by a doctor at Erlanger Hospital. She gave a statement to Detective Zinkeler who was already at the hospital on another case. Detective Zinkeler advised her, due to the lack of physical evidence of sexual assault, to contact the district attorney general's office, which she did. Arrangements were made for Angelia Kay Clinton to be equipped with a portable tape recorder, and she recorded two conversations with her father while he was in the hospital.

In the first conversation on Monday, October 17, 1983, the defendant stated he was sorry for what he had done, that he had never touched his other daughters and he would be ruined if she pressed the matter. In the second conversation on Wednesday, October 19, 1983, the defendant admitted having sex with the victim, but stated he did not think it was by force.

The defendant testified and denied any act of sexual intercourse with his daughter. He stated his daughter kissed him while he was visiting her and tried to pull him down on the bed. He denied admitting on the tapes any act of sexual intercourse and stated he was discussing on the tapes the kiss and his daughter's actions.

There was also testimony of various family members that the victim told them the defendant did not rape her and that the victim's reputation for truth and veracity was bad. Several of these same witnesses testified as to the good reputation of the defendant.

The defendant was convicted May 11, 1984, and on June 10 the victim wrote a letter to the trial judge stating her father did not rape her or commit incest and asked to speak with the judge to explain "why this went so far." On June 19, 1984, the victim went to the office of defense counsel and signed a sworn statement stating that the defendant did not rape her or have incest with her. The victim was warned

that she could be subject to prosecution for perjury.

June 22, 1984, the defendant's motion for a new trial was heard and the victim again recanted her trial testimony. At the conclusion of the hearing, the court granted the motion for a new trial as to the rape case, but overruled it as to the incest case.

The defendant's major issue on appeal is that the motion for a new trial as to the incest case should have been granted on the basis of newly discovered evidence. We find no merit in this issue.

■ A new trial will not be granted on newly discovered evidence where it appears that such new evidence can have no other effect than to discredit the testimony of a witness at the original trial, contradict a witness' statements or impeach a witness, unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness so strong and convincing that a different result at trial would necessarily follow. *Rosenthal v. State*, 200 Tenn. 178, at 186, 292 S.W.2d 1 (1956).

In the present case the testimony of the victim is important to the issue of rape as her testimony is the only evidence that rape occurred. However, the tapes recorded an admission by the defendant that he had sex with his daughter and that he did not think it was by force. Therefore, in the incest case, the victim's testimony is not the only evidence. As the trial judge stated, the victim "could not recant the testimony of her father on those tapes."

■ The decision to grant or deny a new trial on the basis of newly discovered evidence is a matter which rests in the sound discretion of the trial court. *Jones v. State*, 519 S.W.2d 398 (Tenn.Cr.App. 1974). A trial judge's findings have the weight of a jury verdict and will not be set aside unless the evidence preponderates against his findings. *Janow v. State*, 4 Tenn.Cr.App. 195, 470 S.W.2d 19 (1971). The trial judge did not abuse his discretion here.

■ The defendant next raises several issues that relate to the rape case. The defendant contends the Tennessee Rape Shield Law, T.C.A. 40–17–119, should be held unconstitutional, and that the jury should have been charged on consent in the rape prosecution, as well as the resistance required in a rape case. These issues do not relate to the incest charge, only the rape charge for which a new trial has been granted. An appellate court will not pass on lawsuits when there is no justiciable controversy presented, or render advisory opinions on questions which are premature and contingent and may never arise in the future. *Staten v. State*, 191 Tenn. 157, at 162, 232 S.W.2d 18 (1950), and *State v. King*, 635 S.W.2d 113, 114 (Tenn.1982). These issues are overruled.

■ The defendant next contends it was error for the trial judge not to sever the offenses of rape and incest and try them separately. Rule 14(b)(1), Tenn.R.Crim.P., provides the right to severance "unless the offenses are part of a common scheme or plan and the evidence of one would be admissible upon the trial of the others." Rule 14(b)(2) requires severance of offenses in order to promote a fair determination of the defendant's guilt or innocence. The defendant argues he was prejudiced in his defense of the incest case by the rape shield law which applies to the rape case. We find no merit in this argument as consent is not an issue in the incest case. Accordingly, the defendant was not entitled to a severance of offenses under Tenn.R.Crim.P.

■ Defendant also contends the trial court erred in not granting defense counsel's pretrial motion to introduce learned medical treatises as substantive evidence to refute the testimony of the examining physician. The witness by whom the defendant sought to use these treatises was not called by the state. Thus this issue is overruled. In any event, Federal Rule of Evidence 803(18), cited by the defendant, has not been adopted in Tennessee and medical treatises are hearsay. *Griffin v.*

*State,* 595 S.W.2d 96, 101 (Tenn.Cr.App. 1980).

In a related issue the defendant sought to introduce medical records of the victim under T.C.A. 24–7–111, Uniform Business Records as Evidence Act, and *Graham v. State,* 547 S.W.2d 531 (Tenn.1977). *Graham,* supra, specifically allows medical records made during the course of business to be admitted and are not subject to a blanket objection on the basis of hearsay. "This does not mean, however, that other recognized rules of evidence may not preclude their introduction in whole, or in part." Id., at 538.

Following the cross-examination of the victim, the defendant sought the admission of her hospital records as substantive evidence on her credibility. The records showed minor inconsistencies between her statements and statements to the medical personnel, her requests for additional medication during hospitalization, and her physician's evaluation of her mental and physical condition.

■ After thoroughly reviewing the portions sought to be admitted, the trial judge found the records to be immaterial and denied their admission. We agree. The facts sought to be shown were not relevant to the issues. This issue is overruled as extrinsic evidence of a collateral matter is not admissible for impeachment purposes. *Gray v. State,* 191 Tenn. 526, 532, 235 S.W.2d 20 (1950); *Honeycutt v. State,* 544 S.W.2d 912, 915–916 (Tenn.Cr.App.1976).

■ Next, the defendant contends Officer Eddie Cooper was not qualified as a tape erasure expert and should not have been allowed to testify that in his opinion the tape recorder was not turned off during the conversations. The state contends the officer was testifying about an observable fact. Regardless, the officer testified that he worked in the intelligence division of the Chattanooga Police Department for nine years and had considerable experience in wiring persons and listening to the taped conversations. He testified he could tell whether or not a tape had been turned off during the recording of a conversation. One who has specialized knowledge, skill or experience can qualify as an expert. *State v. Fears,* 659 S.W.2d 370, 377 (Tenn.Cr. App.1983). In *Pruitt v. State,* 216 Tenn. 686, 393 S.W.2d 747 (1965), the court stated that qualified experts must operate the breathalyzer machine and testify about the test results. The court went on to note that: "Requirements for an expert to qualify in testifying to the results are very flexible. The trial judge has discretion in admitting expert testimony, . . ." Id, at 692, 393 S.W.2d 747. This issue is without merit.

■ Defendant also maintains that the trial judge erred in ruling that prospective defense witness Leonard Griffey could be cross-examined about two prior homicides in which he was found not guilty by reason of insanity. Our supreme court adopted Federal Rule of Evidence 608(b) in *State v. Morgan,* 541 S.W.2d 385 (Tenn.1976). Rule 608(b) concerns evidence of character and conduct of a witness and the state sought to cross-examine Mr. Griffey about prior bad acts, not prior convictions, indictments, charges or accusations.

The trial judge held a jury-out hearing in accord with *State v. Morgan,* supra, and determined that the probative value outweighed the prejudicial effect and ruled to allow the state to question the witness. Defense counsel chose not to call the witness. We find no error on the trial judge's part.

■ The defendant next contends that the trial court erred in not charging the jury on the weight to be given the testimony of a drug addict or abuser. The trial judge adequately charged the jury on the credibility of witnesses in general. It is not error to refuse a special request where the charge as given fully and fairly states the applicable law. *Bostick v. State,* 210 Tenn. 620, 360 S.W.2d 472 (1962); *Edwards v. State,* 540 S.W.2d 641 (Tenn.1976).

■ The defendant's next two issues involve the sentencing. First, the defendant maintains the court erred in refusing to

place him on probation. We do not agree. The recent case of *State v. Neeley*, 678 S.W.2d 48 (Tenn.1984), clearly states: "The decision of a trial judge in ruling on a petition for suspended sentence or probation is binding on the appellate courts, unless the decision is capricious, arbitrary or a palpable abuse of discretion." Id., at 49. In the case at bar, there is evidence, pro and con, on the issue of probation, and we cannot say the trial judge is without grounds for denying the petition.

██ The defendant next maintains the trial judge erred in refusing to classify him as an especially mitigated offender under T.C.A. 40–35–108(b)(1–3), 40–35–110. From a reading of the statute, 40–35–108, the language is clear: "(a) A defendant *may* be sentenced as an especially mitigated offender, if...." (emphasis added) This is another matter at the judge's discretion and his decision will not be overturned unless it is capricious, arbitrary, or palpably abusive. See *Stiller v. State*, 516 S.W.2d 617 (Tenn.1974). The trial judge stated he denied the mitigated offender classification based on careful consideration of "all of the specified twelve mitigating factors and all of the specified ten enhancing factors." On this record we cannot say that the trial judge erred in failing to find the defendant to be an especially mitigated offender.

In summary, we find all of the defendant's issues to be meritless and affirm the conviction.

BYERS, J., and JOHN D. TEMPLETON, Special Judge, concur.