IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY SESSION, 1997

FILED

October 31, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 03C01-9608-CC-00316** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **BLOUNT COUNTY** |
| **VS.** | ) | |
| | ) | **HON. D. KELLY THOMAS, JR.** |
| **JIMMY GREENE,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal)** |


FOR THE APPELLANT:

JULIE A. MARTIN
P. O. Box 426
Knoxville, TN 37901-0426

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

SANDY R. COPOUS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

MIKE FLYNN
District Attorney General

KIRK ANDREWS
Assistant District Attorney
706 Walnut Street
Knoxville, TN 37901


OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Jimmy Greene appeals from a jury verdict rendered in the Blount County Circuit Court finding him guilty of the aggravated rape of a person less than thirteen years of age. As a Range I standard offender, Appellant received a sentence of twenty-two years in the Tennessee Department of Corrections. On April 10, 1996, Appellant filed a motion for a new trial alleging, inter alia, the existence of newly discovered evidence. The trial court denied this motion on May 21, 1996. Appellant presents three issues for consideration on this direct appeal: (1) whether the evidence was sufficient to sustain the conviction for aggravated rape; (2) whether the prosecution's remarks made during closing argument were improper and prejudicial; and (3) whether the trial court erred in denying Appellant's motion for a new trial based on the alleged existence of newly discovered evidence.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTUAL BACKGROUND

The proof shows that on or about June 24, 1991, four-year-old A.L. first revealed to her paternal grandmother that A.'s stepfather, Appellant Jimmy Greene, had performed certain sexual acts upon her.[1] At the time of the alleged incidents, A. resided with her mother and her stepfather, Appellant herein. On June 28, 1991, A.'s grandmother took her to the emergency room at Blount Memorial Hospital for a sexual abuse examination. As a result of the allegations

---

[1] Pursuant to the policy of this Court, the minor victim of sexual abuse in this case will be referred to by her initials rather than her full name.

and subsequent investigation of sexual abuse, A.'s grandmother obtained legal and physical custody of A.

At trial, the court permitted A. to use anatomically correct dolls to facilitate her explanation of the sexual acts to which she was subjected. A. testified that her stepfather inserted his fingers into her vagina, which she referred to as her "poopy-cat," and her rectum. A. further testified that Appellant "put his poopy-cat [penis] in my mouth and he played with my poopy-cat and bottom." Finally, A. stated that Appellant inserted his penis into her mouth and "peed" and "made me swallow it."

On October 3, 1991, four months subsequent to the last incident of sexual abuse, Dr. Gerald Blossom examined A. as part of the investigation into the allegations of sexual abuse. By the time of the trial, Dr. Blossom was employed at Children's Hospital in Knoxville as an emergency pediatrician. At trial, Dr. Blossom testified that when examining A., he noted some thickening of the hymenal membrane at approximately the four to five o'clock position. He stated that the hymenal membrane is typically thin and that the abnormal thickening of A.'s hymenal membrane would have been caused by rubbing an object across and against the membrane. Dr. Blossom further testified that his examination also revealed that A.'s hymenal opening measured one centimeter in diameter. Dr. Blossom then proceeded to elaborate on the significance of this abnormal measurement. "This is approximately twice the size you would expect to see in a four-year-old girl." While acknowledging that normal variations exist in the size, shape, and width of hymenal openings in four-year-old females, Dr. Blossom also emphasized, "This is about twice the average to maximum size. . . . [T]his is much more than you would ever expect to find in a normal situation." Dr. Blossom also explained that the only way in which the hymen could be

stretched to a much larger diameter than normal, as was A.'s, is through direct and forcible penetration. He further testified that the more times that the hymen is stretched, the less likely it is that the hymen will return to its normal condition. Finally, Dr. Blossom opined that A.'s vagina had been forcibly penetrated.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant's first contention on this direct appeal is that the evidence was insufficient to sustain a conviction for aggravated rape. We disagree.

This Court is obliged to review challenges to the sufficiency of the convicting evidence according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d at 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from

reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Finally, TENN. R. APP. P. 13(e) provides, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." See also Matthews, 805 S.W.2d at 780.

We stated in Matthews that "A criminal offense may be established exclusively by circumstantial evidence. However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances `must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant.'" 805 S.W.2d at 779-80 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)).

Viewing the evidence in light of the above-stated criteria, we hold that a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed aggravated rape. First, the jury heard the compelling testimony of young A.L., age eight at the time of the trial in December 1995. A. precisely described for the jury what had occurred between herself and Appellant. Moreover, she acknowledged that she could readily distinguish between a "good touch" and a "bad touch." Clearly, a rational trier of fact could reasonably credit A.'s testimony.

Second, the prosecution presented the testimony of Dr. Gerald Blossom, the physician who examined A. Dr. Blossom testified that although A.'s hymenal opening was in tact at the time of the examination, the diameter across A.'s hymen measured one centimeter--twice the size which one would expect to find

in a typical four-year-old girl. Furthermore, Dr. Blossom testified that his examination of A. revealed some thickening in her hymen at approximately the four to five o'clock position. After explaining that the usual appearance of the hymen is that of a very thin membrane, Dr. Blossom opined that the thickening of A.'s hymen was caused by the repeated rubbing of an object against her hymenal membrane.

Finally, the State introduced the testimony of A.'s paternal grandmother. She related the manner in which A. first disclosed to her the sexual interactions between A. and Appellant.

In urging this Court to hold that the evidence is insufficient to sustain his conviction, Appellant places great emphasis on the fact that A. was acquainted with three men whose names were James: A.'s biological father, James (called "Jimbo"); her stepfather, James (called "Jimmy") Greene; and her grandfather, James L. Appellant's primary contention is that A. was confused about who perpetrated the sexual acts upon her and thus wrongly accused Appellant. However, the record is clear that A. unfailingly referred to her stepfather as "Jimmy". Furthermore, when shown photographs of her family members by a police detective, A. positively identified Appellant as the perpetrator. Given the foregoing, the jury was more than justified in concluding Appellant was the perpetrator of the rapes.

## III. ALLEGED IMPROPRIETY OF PROSECUTION'S REMARKS DURING CLOSING ARGUMENT

Appellant urges this Court to find that certain remarks made by Assistant Attorney General Kirk Andrews so prejudiced the outcome of Appellant's trial as to rise to the level of reversible error. First, Appellant objects to Ms. Andrews'

statement that, as the victim of a childhood rape, A. always would be "serving her time" and that the facts could lead the jury only "to the emotion of outrage." Additionally, Appellant takes issue with the Assistant Attorney General's comment that the jury's responsibility was to "relieve a little girl's mind" of remembering what Appellant had done to her and to "put a final legal seal on a little girl's pain and suffering." Appellant also asserts that the prosecutor conducted herself improperly by imploring the jury to give Appellant "his just desserts." Lastly, Appellant urges this Court to conclude that the State's assertion made during closing argument that as a child sex abuse specialist, Dr. Gerald Blossom was "the definitive doctor... to make the definitive examination" constituted improper prosecutorial conduct.

Rather than contemporaneously objecting to any purportedly improper remarks made during the State's closing argument, Appellant's counsel opted to raise all objections to the foregoing remarks at the conclusion of the State's rebuttal argument. The trial court then issued curative instructions to the jury, informing them that "arguments are not evidence," but that they merely are arguments based upon the evidence. The court further instructed the jury that the arguments of counsel also contain reasonable inferences which may be drawn from the evidence.

Appellant has waived his right to raise this issue on appeal due to his failure to contemporaneously object to the prosecution's allegedly improper remarks at trial. See State v. Byerley, 658 S.W.2d 134, 139 (Tenn. Crim. App. 1983) (citing State v. Sutton, 562 S.W.2d. 820, 825 (Tenn. 1978)).

Nevertheless, we will briefly examine the merits of Appellant's complaints. In Tennessee, it is well-settled that in reviewing allegations of prosecutorial misconduct, the test to be applied by the appellate court is to ascertain "whether

-7-

such conduct could have affected the verdict to the prejudice of the defendant." State v. Smith, 803 S.W.2d 709, 710 (Tenn. Crim. App. 1990) (citing Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976)). In Judge v. State, 539 S.W.2d at 344, this Court articulated five factors to be utilized by appellate courts when evaluating claims of prosecutorial misconduct during closing argument. The Tennessee Supreme Court approved of and adopted this five-factor analysis in State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984). These five factors include: "`(1) the conduct complained of viewed in context and in light of the facts and circumstances of the case; (2) the curative measures undertaken by the court and the prosecution; (3) the intent of the prosecutor in making the improper statement; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case.'" Id. (quoting Judge v. State, 539 S.W.2d at 344).

In Coker v. State, this Court explained that "Trial courts have substantial discretionary authority in determining the propriety of final argument. Although counsel is generally given wide latitude, courts must restrict any improper commentary." 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995) (citing Sparks v. State, 563 S.W.2d 564 (Tenn. Crim. App. 1978)). The broad discretion accorded to trial courts in controlling the argument of counsel "will not be reviewed absent abuse of that discretion." Smith v. State, 527 S.W.2d 737, 739 (Tenn. 1975). See also State v. Payton, 782 S.W.2d 490, 496 (Tenn. Crim. App. 1989).

In the case sub judice, the offending remarks were neither lengthy nor repeated. Second, once Appellant's counsel made known to the court her objections to certain portions of the State's closing argument, the trial court issued curative instructions to the jury to rectify any perceived impropriety. Third, nothing in the record indicates that these remarks were made maliciously in an

attempt to unduly prejudice the jury. Fourth, the cumulative effect of the purported prosecutorial improprieties do not rise to the level of reversible error. The trial court prudently gave curative instructions to the jury in which it described the meaning and significance of closing arguments. Finally, the testimony of the victim, her grandmother, and the medical proof form the basis of a compelling case against Appellant. Under the circumstances, we find no reversible error with respect to this issue.

## IV. NEWLY DISCOVERED EVIDENCE

Finally, Appellant argues that the trial court abused its discretion in denying his motion for a new trial on the basis of newly discovered evidence. We disagree.

To receive a new trial on the ground of newly discovered evidence, Appellant must demonstrate "(1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence"; and (3) that the evidence will likely change the outcome of the trial. State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994) (citing State v. Goswick, 656 S.W.2d 355, 358-60 (Tenn. 1983)). The trial court is accorded broad discretion in deciding whether to grant or deny a motion for a new trial predicated on newly discovered evidence. State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995). Moreover, the trial court is authorized to ascertain the credibility of newly discovered evidence for which the new trial is desired, and the motion should be denied unless the court has assured itself that the testimony would be worthy of belief by the jury. Id. (quoting Rosenthal V. State, 292 S.W.2d 1, 5, cert. denied, 352 U.S. 934, 77 S.Ct. 222, 1 L.Ed.2d 160 (1956)). As a general rule, "newly discovered impeachment evidence will not constitute grounds for a new trial. But if the impeaching

evidence is so crucial to the defendant's guilt or innocence that its admission will probably result in an acquittal, a new trial may be ordered." State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993) (citing State V. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985); Rosenthal v. State, 292 S.W.2d at 4-5; Evans v. State, 557 S.W.2d 927, 938 (Tenn. Crim. App. 1977)).

At the hearing on the motion for new trial, Appellant proffered as newly discovered evidence the testimony of two witnesses, Kevin Shepherd and Vilma Mimi Laney.

Shepherd is an attorney who had represented Appellant initially when Shepherd worked at the Public Defender's Office. Mr. Shepherd testified that he had attempted unsuccessfully to contact Vilma Mimi Laney at a telephone number which he had discovered while endeavoring to locate witnesses.

Ms. Laney, a friend of A.'s mother., testified that shortly after Appellant was indicted in 1991, she accompanied A.'s mother to the Department of Human Services to visit A. During that visit, Ms. Laney allegedly overheard A. tell her mother "that her [the mother's] Jimmy didn't do it." Ms. Laney explained that although she resided next to Appellant and A.'s mother in 1991, she moved to another residence in Blount County in 1992. She further stated that she had resided at approximately five different residences, all being within Blount County save one, between 1991 and 1996 and that she had neglected to maintain continuous telephone service during this time. Additionally, Ms. Laney indicated that she was unaware that Appellant's trial had been scheduled for December 1995 but manifested her willingness to testify as to the conversation between A. and her mother if a new trial were granted. When the State asked Ms. Laney whether she had reported this information to anyone at the time, she responded:

"No. I just didn't think to, you know, at the time, and everything. I didn't think anything was--at the time, I didn't report it."

The trial court correctly found this was not newly discovered evidence because Appellant's attorney was aware of it before the trial. The appropriate remedy for a missing witness is a continuance. Appellant failed to seek such a continuance and cannot now be heard to complain. See State v. Dorning, 682 S.W.2d 221, 223 (Tenn. Crim. App. 1984) (holding that the trial court properly denied a motion for new trial on the basis of the alleged newly discovered evidence of an unavailable witness where no due diligence was exercised in procuring witness and denying relief on appeal where Appellant failed to file a motion for continuance); King v. State, No. 01C01-9603-CR-00086, slip op., 1, 7 (Tenn. Crim. App. June 6, 1997) (holding that "Continuances may be granted for the purpose of securing the presence of identifiable witnesses if their testimony is material and admissible.").In any event, there appears to be a lack of due diligence in endeavoring to locate Ms. Laney. A few telephone calls hardly satisfies this criterion. Second, the evidence is at most impeachment material in the nature of a prior inconsistent statement. Under these circumstances, the trial court properly denied Appellant a new trial on the basis of allegedly newly discovered evidence.

Accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE

-11-

CONCUR:

_____
JOSEPH M. TIPTON, JUDGE

_____
THOMAS T. WOODALL, JUDGE