# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### SEPTEMBER SESSION, 1997

FILED

November 20, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9610-CC-00359 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | HENRY COUNTY |
| VS. | ) | |
| | ) | HON. JULIAN P. GUINN |
| TERRELL DION COWANS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Rape of a Child & Aggravated |
| | ) | Sexual Battery) |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF HENRY COUNTY

FOR THE APPELLANT:

GUY T. WILKINSON
District Public Defender
P.O. Box 663
117 Forrest Avenue North
Camden, TN 38320

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

EUGENE J. HONEA
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

ROBERT "GUS" RADFORD
District Attorney General
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# <u>OPINION</u>

The Defendant, Terrell Dion Cowans, was convicted of one count of rape of a child and one count of aggravated sexual battery. He was sentenced as a Range I, standard offender to fifteen (15) years for the rape of a child conviction and eight (8) years for the aggravated sexual battery conviction, to be served concurrently. The Defendant appeals his convictions, raising four issues: (1) That the trial court erred by failing to grant the Defendant's motion for a new trial based on the newly discovered evidence that one of the victims recanted her testimony; (2) that the trial court erred by not permitting defense counsel to question one of the victims about an alleged pregnancy by another man; (3) that the trial court erred by failing to suppress statements made by the Defendant; and (4) that the evidence was insufficient to support a verdict of guilt for both convictions. We affirm the judgment of the trial court.

On June 27, 1994, A.W. and S.E.[1], who were cousins, were at A.W.'s house in Paris, Tennessee. That morning, the two girls decided to walk to A.W.'s uncle's house nearby to get some money for food. Before they left, either the Defendant called A.W. or A.W. called the Defendant on the telephone. She had met him at Ralph's Golf. At that time, A.W. was twelve (12) years old, S.E. was eleven (11) years old, and the Defendant was eighteen (18) years old. The Defendant told A.W. that he wanted her to go to another girl's house and knock on her door for him. A.W. did not know who the other girl was.

---

[1] It is a policy of this Court to refer to child sex abuse victims by their initials only.

A.W. took S.E. with her to Bryan Atkinson's house because the Defendant was going to be there to tell her where the other girl lived. S.E. was unaware of the content of the conversation between A.W. and the Defendant and A.W. told her they were taking a shortcut to her uncle's house. A.W. and S.E. went to Atkinson's house where the Defendant was waiting. A.W. pulled S.E. into the house. They all talked together in Atkinson's bedroom. The Defendant went into the bathroom and told A.W. to go with him because he needed to talk to her. The bathroom door was shut and the light was on. The Defendant told her that he liked S.E. and that he wanted to talk to S.E. The Defendant was wearing pants and A.W. was wearing shorts and a shirt. S.E. thought she heard a scream while A.W. was in the bathroom with the Defendant, but she was not sure.

A.W. left the bathroom and told S.E. that the Defendant wanted to talk to her. The Defendant told S.E. to "come here" and she complied. The Defendant pulled S.E. into the bathroom. A.W. sat in Atkinson's bedroom. The Defendant appeared to be wearing a pair of jogging pants and S.E. was wearing blue jean shorts and a shirt. The Defendant pushed S.E. down on the floor. He held her arms down above her head. The Defendant pulled her clothes off or down. S.E. could not recall whether the Defendant's clothes were off because the room was dim. The Defendant fondled S.E.'s breasts over her shirt. She could not remember whether the Defendant exposed or touched her with his penis. S.E. told him to "let me up" and the Defendant allowed her to get up and put on her clothes. The Defendant said something about "still friends" and S.E. walked away. She left the bathroom and went outside on the porch.

A.W. then went into the bathroom to talk with the Defendant. He told her he wanted to have sex. The door was shut. A.W. replied that she had a boyfriend and did not want to have sex with the Defendant. The Defendant persisted and got closer to A.W. He pushed her either against the sink or the toilet and opened her shorts. A.W. said no but the Defendant was holding her hands. He pulled down the shorts and they fell down farther. The Defendant exposed his penis and then penetrated A.W.'s vagina with part of his penis. A.W. kept saying no and the Defendant withdrew and ejaculated. The Defendant apologized and said he "got carried away." A.W. was crying and left the bathroom. She left and caught up with S.E. who was already walking down the alley behind the house.

A.W. asked S.E. if something happened to her and S.E. said nothing had happened. Later that day, S.E. told her stepmother what the Defendant had done. Her stepmother and father took her to the hospital emergency room later that evening. A.W. also went to the hospital. Carolyn Gore of the Department of Human Services' child abuse investigation division interviewed both victims. Dr. Debra Sue Selby conducted pelvic examinations on both victims and rape kits were collected. Dr. Selby examined S.E. and found redness at the entrance of the vagina as well as superficial lacerations at three areas as well as on the right labia minora. The hymen was red but intact. Dr. Selby examined A.W. and found a discharge from the vagina and found that the hymen had a small amount of tissue left, with ragged edges and a very large opening rather than a small opening which is expected. There was purulent discharge at the cervix. Dr. Selby noted that damage to the hymen could be due to causes other than vaginal

penetration, such as blunt trauma. Dr. Selby did not have the test results at trial, but recalled that the presence of sperm was not detected in either victim.

Lieutenant Eddie Snow, an investigator for the Paris Police Department, was assigned to the case. He interviewed Bryan Atkinson and then decided to contact the Defendant. Lieutenant Snow telephoned the Defendant and requested that he come to the police department. The Defendant came and spoke with Snow, which conversation was initially not recorded. Lieutenant Snow then gave the Defendant <u>Miranda</u> warnings before he agreed to make an audio taped statement. In that statement, the Defendant admitted that he was at Bryan Atkinson's house when the victims were there. He asked A.W. to have sex with him and she agreed. They went into the bathroom and A.W. was positioned on the toilet. He stated that A.W. pulled her shorts down and he proceeded to penetrate her vaginally, but only partially. He stated that he then asked A.W. how old she was and she said she was thirteen (13). He withdrew, but denied that he ejaculated.

The Defendant denied having any sexual contact with S.E. He stated that he was in a back room alone with her for a brief time and he asked whether she had a boyfriend and how old she was. He stated that S.E. said she was thirteen. He denied touching S.E. or exposing his penis or penetrating her with his penis or his fingers.

The Defendant was indicted on July 5, 1995, for one count of rape of a child and one count of aggravated sexual battery. Defense counsel moved to suppress the Defendant's statement, which was denied by the trial court after a

hearing on the motion held on August 15, 1995. He was tried by a Henry County jury on November 8, 1995, and found guilty on both counts. The Defendant was sentenced to fifteen (15) years for the rape of a child conviction and eight (8) years for the aggravated sexual battery conviction.

I.

In his first issue in this appeal, the Defendant argues that the trial court erred by failing to grant a new trial based on newly discovered evidence. In his motion for new trial the Defendant alleged that there was newly discovered evidence in the form of A.W.'s recantation of her testimony at trial. It was submitted as an affidavit for consideration at the hearing on the motion. The contents of the affidavit in pertinent part is as follows:

> Terrell Dion Cowans and I, [A.W.], are friends. He was talking to me about another girl on that day. He did not rape me, he did not even touch me. When night came the police came and got me and took me to the hospital, I was shocked. Terrell and I did not have intercourse. He did not rape me. Carolyn Gore told us that the test showed I had had intercourse. I tried to tell Ms. Gore, the social worker, that it did not happen and she would not listen. Randy Shankle heard my conversation with Ms. Gore. We were at my house when this conversation took place. She said it was too late, the trial is over.
> . . .
> I swear that I am telling the truth and I want to do the right thing. I have told my grandmother, my uncle, and my friends that he did not do anything to me. Mrs. Gore kept on pressuring me at the Emergency Room. She told me what to say. I even told Mrs. Gore after the trial that I didn't think it was fair and she said it was too late.
> . . . .

The Defendant asserts that this newly discovered evidence entitles him to a new trial. The decision to grant or deny a new trial on the basis of newly

-6-

discovered evidence is a matter which rests in the sound discretion of the trial court.  State v. Goswick, 656 S.W.2d 355, 358 (Tenn. 1983).  To acquire a new trial as of right based on newly discovered evidence, a defendant must demonstrate (1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence; and (3) that the evidence will likely change the result of the trial.  State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994); Goswick, 656 S.W.2d at 358-360.  A new trial will not be granted on the basis of newly discovered evidence when the effect is merely to impeach a witness' testimony at trial unless the impeaching evidence is so crucial to the defendant's guilt or innocence that its admission would change the outcome of the case.  State v. Singleton, 853 S.W.2d 490, 496 (Tenn. 1993); State v. Rogers, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985).

At the hearing on the motion for a new trial, no oral testimony was presented, and the trial court resolved the issue based upon the affidavit. Therefore, the rule vesting controlling discretion in the trial judge does not govern on appeal, and whether the requirements have been fulfilled becomes a question of law.  Goswick, 656 S.W.2d at 359; State v. Holt, 801 S.W.2d 518, 521 (Tenn. Crim. App. 1990).  In refusing to grant a new trial, the trial judge stated on the record that:

> [Y]ou've got the obvious problem that arises from time to time of the so-called recanting victim.  And it was a subject that could have easily been explored had it been done at the time of trial.  As a matter of fact, the law says that it should have been done at that time.  And having once taken the sworn testimony that law is very loathe to now take somebody's recantation by swearing that they swore to a lie, particularly when it could have been taken care of appropriately as is required by law at the time of the trial.

We agree that the Defendant had an opportunity at trial to cross-examine the victim to determine the veracity of her testimony. Even if we were to assume that the Defendant could not have obtained the new information with reasonable diligence, we do not believe a new trial was warranted. Obviously, the accusations made by the victim were highly material to the case. Yet, no recantation of the victim's testimony can alter the fact that the Defendant himself admitted to penetrating the victim. Circumstantial evidence obtained from the medical examination also corroborated the allegation that a penetration occurred. Finally, all of the persons present when the act occurred testified or made statements that the Defendant and A.W. were in the bathroom together. Therefore, we do not believe that evidence that the victim recanted would likely change the result of the trial. This issue is without merit.

## II.

As his second issue, the Defendant argues that the trial court erred by not permitting defense counsel to question the victim, A.W., about her alleged pregnancy by another man. The record reflects that defense counsel raised the issue after the close of the proof. Defense counsel informed the trial judge that Bryan Atkinson told her that A.W. was pregnant. Bryan Atkinson testified in a jury-out hearing that "I might have heard some talk at school" approximately "two or three months ago." The offense in question occurred on June 27, 1994, and the trial was conducted on November 8, 1995. The trial court concluded that the information was merely a rumor as the witness admitted. He found that the evidence did not comport with the requirements of Rule 412 of the Tennessee

Rules of Evidence. Finally, the trial judge stated that the allegation was irrelevant and immaterial to the prosecution being conducted.

The Defendant argues that under Rule 412 of the Tennessee Rules of Evidence, he should have been allowed to question the victim at trial regarding specific instances of conduct under an exception for newly discovered evidence. Tenn. R. Evid. 412(d)(1)(I). The State counters that Rule 412 does not apply to the offense of rape of a child. The language of Rule 412 states that it applies when "a person is accused of an offense under T.C.A. §§ 39-13-502 [aggravated rape], 39-13-503 [rape], 39-13-504 [aggravated sexual battery], 39-13-505 [sexual battery], 39-13-507 [spousal sexual offenses], or the attempt to commit any such offense." Tenn. R. Evid 412. Rape of a child, Tennessee Code Annotated section 39-13-522, is not one of the offenses enumerated. See also State v. Jason Adam Brinkley, Jr., A.K.A. "Bubba", C.C.A. No. 01C01-9307-CC-00231, Sumner County (Tenn. Crim. App., Nashville, July 14, 1995)(Rule 412 held inapplicable to statutory rape). However, we find that there is a distinction between Brinkley and the case at bar.

We first note that the offense of rape of a child was enacted by the General Assembly in 1992 and codified as Tennessee Code Annotated section 39-13-522. See Tenn. Pub. Acts 1992, ch. 878 § 1. Prior to that, the offense now embodied in section 39-13-522 was contained within the offense of aggravated rape before it was recodified. See Tenn. Code Ann. § 39-13-502(a)(4) (Supp. 1991). Rule 412 of the Tennessee Rules of Evidence was established in 1991 to replace the rape shield statute contained Tennessee Code Annotated section 40-17-119. See Tenn. R. Evid. 412, Advisory Commission Comment. The

comment contains no reference to rape of a child. Although we cannot determine why rape of a child has been omitted, we believe that Rule 412 should govern evidentiary rulings for the offense, rather than the general application of Rule 404(a)(2). This interpretation avoids the illogical result that would otherwise occur in this case. Here, the evidence regarding S.E., the victim of the aggravated sexual battery would be governed by Rule 412 because that offense is one of the enumerated offenses under the rule. However, evidence regarding A.W., the victim of the rape of a child, would be admitted only by way of Rule 404(a)(2).

Therefore, we shall consider the Defendant's argument that the evidence should have been admitted under Rule 412. The Defendant argues that Rule 412 sets out the procedure for questioning a victim about specific instances of conduct. See Tenn. R. Evid 412(c)(4)(I). The Defendant contends that evidence of the victim's pregnancy would rebut medical evidence introduced at trial. He explains that his failure to file a motion ten days before the trial can be explained because the evidence was newly discovered and could not have been obtained through the exercise of due diligence. See Tenn. R. Evid. 412(d)(1)(I).

We cannot agree. The Defendant did not make the motion in a timely manner. The Defendant argues that trial counsel heard this information the day before trial and could not conduct an investigation. However, we see no reason why the Defendant was prevented from interviewing the State's witnesses prior to trial to obtain additional information about the victim. There are valid policy reasons for the rule, especially in this kind of case. See State v. Gussie Willis Vann, C.C.A. No. 03C01-9408-CR-00279, Bradley County (Tenn. Crim. App.,

-10-

Knoxville, Sept. 18, 1995); State v. Stephen Ray Stamps, C.C.A. No. 02C01-9301-CC-00002, Henry County (Tenn. Crim. App., Jackson, March 2, 1994), perm. to appeal denied, (Tenn. 1994). As the State points out, the proffered testimony of Bryan Atkinson did not necessarily indicate that the pregnancy was due to sexual activity prior to this offense. There is no indication it would rebut the medical testimony. It is clear that if the victim was pregnant at the time of trial, it could not be considered as evidence of the victim's sexual activity prior to the offense. The trial was conducted more than fifteen months after the offense. Finally, the trial court made a finding that the information was an unsubstantiated rumor and was irrelevant to the case being tried. It is settled that the admissibility of evidence and the scope of cross-examination rests within the sound discretion of the trial court which will be reversed only for an abuse of such discretion. State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). We cannot conclude that the trial judge abused his discretion, therefore, this issue is without merit.

III.

Next, the Defendant contends that the trial court erred by failing to suppress his statement as violating his Fifth Amendment rights because it was not freely and voluntarily given. The Fifth Amendment to the Constitution as applied to the States through the Fourteenth Amendment insures that the accused may not be compelled to be a witness against himself. The Tennessee Constitution also provides that a defendant cannot be compelled to give evidence against himself. Tenn. Const. art. I, § 9. The accused may waive these rights, but the waiver must be made "voluntarily, knowingly, and intelligently" and "the

-11-

accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." Miranda v. Arizona, 384 U.S. 436, 444, 467, 86 S.Ct. 1602, 1612, 1624, 16 L.Ed.2d 694,706, 719 (1966).

The voluntariness test under the Tennessee Constitution is more protective of individual rights than the test under the Fifth Amendment. State v. Stephenson, 878 S.W.2d 530, 544 (Tenn. 1994); see State v. Crump, 834 S.W.2d 265, 268 (Tenn. 1992); State v. Smith, 834 S.W.2d 915 (Tenn. 1992). A waiver is valid if the suspect is aware of the nature of the right being abandoned and the consequences of the decision to abandon the right. Id. at 547. In assessing whether a waiver of the right was voluntary, we must look at the totality of the circumstances surrounding the relinquishment of the right. State v. Benton, 759 S.W.2d 427, 431-32 (Tenn. Crim. App. 1988).

A hearing on the motion to suppress was held on August 15, 1995. The Defendant testified that he was asked to come to the police department. He was placed in a small interview room. Lieutenant Snow and another officer were present. Snow was wearing a uniform and his service revolver. He testified that the officers told him it would be easier if he talked with them. He stated that he was nervous. He also testified that he was not informed that he could have a lawyer but that he understood he could remain silent and leave freely.

On cross-examination, the Defendant was presented with the waiver of rights form bearing his signature. He admitted that he read the form, understood that it waived his right to an attorney and to remain silent, and signed it. The interview was audio taped, including Lieutenant Snow informing the Defendant

about his rights. The Defendant testified that he could not remember his waiving his rights, but did acknowledge the following portion of the statements read to him by the assistant district attorney : "'And you signed the waiver. And then I asked you after reading the statement that you understood your rights, were you willing to talk to me, and you said that you were. And since then we've had a conversation?' And you said, 'Yes, sir.'"

Lieutenant Snow testified that he read the waiver of rights form to the Defendant before he interviewed him. He testified that he explained the form and the Defendant signed it. He denied that he forced or coerced or promised leniency to obtain the Defendant's statement.

The trial court overruled the Defendant's motion to suppress. The trial judge assumed that the Defendant had been seized, yet still determined that the Miranda requirements had been met. In this appeal, the State questions whether Miranda warnings were required if the Defendant offered to come to the police department to be interviewed. See State v. Anderson, 937 S.W.2d 851, 853 (Tenn. 1996). Nevertheless, the officers proceeded as if the interview were custodial and read and explained to the Defendant his constitutional rights as required by Miranda. The Defendant argues that his young age of eighteen and other circumstances should be weighed against the appearance that he voluntarily gave the statement. However, we cannot conclude that the record supports a finding that the Defendant was coerced or promised anything that would render his statements involuntary. Furthermore, the Defendant himself admitted that he understood that he was relinquishing his right to remain silent.

When considering the totality of the circumstances, we can only conclude that the trial court did not err in denying the Defendant's motion to suppress.

IV.

Finally, the Defendant contends that the evidence was insufficient to support a verdict of guilt. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

In order to support a conviction for rape of a child, the State was required to prove that there was an "unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). The testimony at trial showed that the victim, A.W., was twelve years old at the time of the offense. She testified that the Defendant penetrated her vagina with his penis. The Defendant's statement corroborated her testimony. The Defendant argues that A.W.'s statements prior to and after the trial were inconsistent with her trial testimony. However, the assessment of credibility of witnesses lies within the

province of the jury. Apparently, the jury resolved this conflict in favor of the State.

The Defendant also challenges the conviction for aggravated sexual battery. The State is required to prove the elements of the crime that there is "unlawful sexual contact with a victim by the defendant or the defendant by a victim" and that "[t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

The testimony at trial revealed that S.E. was eleven years old at the time the offense occurred. She testified that the Defendant forced her onto the floor of the bathroom and fondled her breasts on top of her clothes. This is clearly sufficient proof to establish the elements of aggravated sexual battery. Again, the Defendant challenges details of the trial testimony, suggesting that there were inconsistencies regarding whether S.E. screamed while she was in the bathroom. He also points to S.E,'s frequent answers of "I don't know" to questions about the details of the incident, thus making her testimony suspect. Again, we must conclude that judgments regarding credibility of witnesses are to be made by the jury. We will not disturb these conclusions on appeal. This issue is without merit.

Accordingly, we affirm the judgment of the trial court.


                                         _____

                                         DAVID H. WELLES, JUDGE


CONCUR:


_____
JOE B. JONES, PRESIDING JUDGE


_____
JOE G. RILEY, JUDGE