# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 24, 2011

## STATE OF TENNESSEE v. JEREMY MCMILLON

**Appeal from the Criminal Court for Hamilton County**
**No. 265349      Barry A. Steelman, Judge**

---

**No.  E2010-01091-CCA-R3-CD - Filed September 22, 2011**

---

Appellant, Jeremy McMillon, was indicted by the Hamilton County Grand Jury for first degree murder and felony murder.  At the conclusion of a jury trial, Appellant was convicted of first degree murder.  As a result, he was sentenced to life in prison.  After the denial of a motion for new trial, Appellant appealed, presenting the following issues for our review: (1) whether the testimony of accomplice Cory Haden was sufficiently corroborated; (2) whether the trial court erred in admitting the introduction of testimony about a bullet found during the autopsy into evidence; (3) whether the evidence was sufficient to support the conviction; and (4) whether the trial court erred by refusing to grant a new trial on the basis of newly discovered evidence.  After a thorough review of the record, we determine: (1)  that the evidence was sufficient to support the conviction; (2) that if the jury determined Mr. Haden was an accomplice, his testimony was sufficiently corroborated; (3) that the trial court did not err in admitting testimony about a bullet found during the autopsy into evidence as an exception to the hearsay rule; and (4) that the trial court properly denied the motion for new trial on the basis of newly discovered evidence.  Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., Joined.

Donna Miller, Chattanooga, Tennessee, for the appellant, Jeremy McMillon.

Robert E. Cooper, Jr., Attorney General and Reporter, Cameron L. Hyder, Assistant Attorney General; William H. Cox, III, District Attorney General, and Boyd Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

In August of 2007, Appellant, an individual named Eric Carter, and Lemario Rashard Branham were indicted for the offenses of felony murder[1] and premeditated murder for their involvement in the death of Larry Lebron Parks. Prior to trial, Co-defendant Branham pled guilty in a best interest plea to voluntary manslaughter. Co-defendant Carter pled guilty to second degree murder.

A jury trial was held in March of 2009. At trial, the State's star witness was Corey Haden, the cousin of Co-defendant Eric Carter. Mr. Haden admitted at trial that his testimony at trial was inconsistent with his testimony at a prior preliminary hearing. Mr. Haden stated that he had made mistakes in his earlier testimony. At the time of the incident involved, Mr. Haden was a juvenile. According to Mr. Haden, on the evening of March 7, 2007, he was at a cousin's home recording some songs in a recording studio. Around 8:00 p.m., Mr. Carter arrived and told Mr. Haden that he was going to go to the "front store," a convenience store and gas station in the East Lake section of Chattanooga, Tennessee. Mr. Carter asked Mr. Haden if he wanted to join him. Mr. Carter was driving his champange-colored Ford Expedition.

When they arrived at the store there were a lot of people hanging out. Mr. Haden's brother was there. Mr. Haden got out of the vehicle to visit with his brother. Mr. Haden saw Appellant pull up in a red Pontiac Grand Am. Appellant approached Mr. Carter and said that he "heard" Mr. Carter's "car got shot up." Appellant asked Mr. Carter if he wanted to "do something about it." Mr. Carter told Appellant he wanted to "ask the dude named Peyton why he shoot [sic] up my car." Appellant told Mr. Carter he was a "pussy" and a "bitch" that "let the n_____ shoot your car up and ain't going to do nothing about it." The men seemed to get into an argument about the issue. Finally, Mr. Carter told Appellant to follow him. Appellant never rode in Mr. Carter's vehicle.

At trial, Mr. Haden testified that Appellant was mad about an incident that had happened a few weeks prior during which one of his friends was shot in the face by someone in Eastdale. Appellant had made it known that he was out to "get" the people responsible for the shooting.

---

[1] The indictment for felony murder was dismissed prior to trial on motion of Appellant and co-defendants after the State conceded that there was no proof of an underlying felony.

At that time, Mr. Carter drove his Expedition to "Mr. G's" house. Mr. Haden rode with him in the vehicle along with two other individuals; they were followed by Appellant and Lemario Branham in the red Pontiac. Mr. Carter got out, went inside, and returned with a rifle. The two cars traveled quickly down a side street off of Gillespie before stopping. Mr. Branham and Appellant exited their vehicle and walked up to Mr. Carter's Expedition. Mr. Branham had a handgun. Mr. Branham, Appellant, and Mr. Carter went down the hill on foot. Mr. Haden stayed back at the vehicle and could not see them anymore.

Mr. Haden heard gunshots from at least two different guns. Mr. Haden asked Mr. Carter what was going on down there. Mr. Carter told him not to worry about it. Mr. Branham and Appellant ran back up the hill. The two unidentified men who were riding with Mr. Carter hopped out of his car and into Appellant's car before they sped off. Mr. Haden did not see a gun in Appellant's hand.

The two vehicles traveled back to "Mr. G's" house where Mr. Haden saw Appellant getting out of the vehicle with an AK-47 assault rifle. According to Mr. Haden, Appellant bragged, "I hit one of them n_____s, one of them n_____s dropped." Mr. Haden described Appellant as "happy" and "excited." Mr. Haden was able to identify Appellant in a lineup.

Gregory Guillroy, or "Mr. G," testified that he saw Mr. Carter on the night of the incident. Mr. Carter drove his vehicle to the house that night to get a gun. He was accompanied by a red car. Mr. Carter handed "Mr. G" an assault rifle that was still hot. Another person handed a handgun to Mr. Carter in a plastic bag. Mr. Guillroy testified that he later gave the assault rifle to Mr. Carter's father. Mr. Guillroy testified that he did not see Appellant at his house that night.

Mr. Guillroy recalled that Mr. Haden was sitting in the passenger seat of Mr. Carter's vehicle and there were four people in the red car. One of the men in the red car got out and threw something in the drainage ditch. Officers later recovered a live .223 round in the drainage ditch during the investigation. They also found a .380 semi-automatic handgun in a plastic bag in Mr. Guillroy's backyard and a .260 caliber bolt-action rifle in the front yard.

Charlie Jefferson, a friend of the victim, testified at trial. Mr. Jefferson was with the victim on the night of the incident. The two decided to walk to the store for a quart of beer to split. They heard gunshots, and Mr. Jefferson instructed his friend to "get down." The men tried to run hand in hand to the "corner" and "hide." The victim let go of Mr. Jefferson's hand, and the two men fell to the ground. When the shots ended, Mr. Jefferson found his friend lying in a ditch "all twisted." Mr. Jefferson stated that the bullets came from the hill and were "flying everywhere." Mr. Jefferson testified that there were some "young guys" standing in the street before the shooting started.

Fingerprints were lifted from the Expedition that matched the fingerprints of Mr. Carter, Mr. Branham, Mr. Haden, and Appellant. Appellant's fingerprints were located near gunshot residue primer that was found on the Expedition on the passenger-side doorframe and armrest. Appellant's prints were on the inside and outside of the passenger side door. At the scene, authorities found twelve .223 shell casings and three .380 shell casings. The assault rifle was not located.

Several other witnesses came forward that were able to testify that a tan SUV and red car were seen on the night of the crime driving quickly down the street.

Mary Goolsby, a pathologist, testified that the victim suffered a gunshot wound to the chest. The victim was not dead on arrival at the hospital but later died as a result of the gunshot wound. The bullet entered the victim's body through his back, split his spinal cord in two, passed through his liver, his right lung, and exited the body through the chest. Marie McGee, a forensic technician who assisted in the autopsy of the victim, testified at trial. She testified that a bullet was found during the victim's autopsy and the bullet must have fallen out of the victim's clothing. The bullet was identified as a .223 caliber bullet. There was testimony from a firearms expert that the .223 caliber bullet could not have been fired from the rifle that was recovered from Mr. Guillroy's yard.

Appellant called Carol Pilcher, Appellant's aunt, to testify. At the time of the incident, Ms. Pilcher recalled that Appellant had been staying with her for a few weeks. On the evening of the incident, Appellant came home between 8:30 p.m. and 9:00 p.m. Ms. Pilcher remembered the time because the Jeopardy television show had concluded. Ms. Pilcher admitted that she had a prior felony for a forged check.

At the conclusion of the proof, the jury found Appellant guilty of first degree murder. Appellant filed a motion for new trial and several amendments. After a hearing, the trial court denied the motion for new trial. A timely notice of appeal followed. On appeal, Appellant argues that the evidence was insufficient, that the accomplice testimony was uncorroborated, that the trial court improperly allowed the State to introduce testimony about the bullet found during the autopsy of the victim, and that the trial court erred by denying the motion for new trial despite the introduction of new evidence.

*Analysis*

*Sufficiency of the Evidence*

Appellant argues on appeal that the evidence was insufficient to support the conviction. Specifically, Appellant contends that there was "absolutely no evidence to

corroborate the testimony of Corey Haden, an uncharged accomplice, and . . . no evidence of the requisite mens rea of premeditation . . . ." The State disagrees.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

The identity of the perpetrator is an essential element of any crime. *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975). However, the identification of the defendant as the person who committed the crime is a question of fact for the trier of fact. *See State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).

First degree murder is described as "[a] premeditated and intentional killing of another; . . . ." T.C.A. § 39-13-202(a). Tennessee Code Annotated section 39-13-202(d) provides that:

> "[P]remeditation" is an act done after the exercise of reflection and judgment.
> "Premeditation" means that the intent to kill must have been formed prior to

the act itself.  It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time.  The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

An intentional act requires that the person have the desire to engage in the conduct or cause the result.  T.C.A. § 39-11-106(a)(18).  Whether the evidence was sufficient depends entirely on whether the State was able to establish beyond a reasonable doubt the element of premeditation.  *See State v. Sims*, 45 S.W.3d 1, 7 (Tenn. 2001); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999).  Whether premeditation is present is a question of fact for the jury, and it may be inferred from the circumstances surrounding the killing.  *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006); *see also State v. Suttles*, 30 S.W.3d 252, 261 (Tenn. 2000); *State v. Pike*, 978 S.W.2d 904, 914 (Tenn. 1998).

Premeditation may be proved by circumstantial evidence.  *See, e .g., State v. Brown*, 836 S.W.2d 530, 541-42 (Tenn. 1992).  Our supreme court has identified a number of circumstances from which the jury may infer premeditation: (1) the use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) the defendant's threats or declarations of intent to kill; (4) the defendant's procurement of a weapon; (5) any preparations to conceal the crime undertaken before the crime is committed; (6) destruction or secretion of evidence of the killing; and (7) a defendant's calmness immediately after the killing.  *See Pike*, 978 S.W.2d at 914-15; *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997). This list, however, is not exhaustive and serves only to demonstrate that premeditation may be established by any evidence from which the jury may infer that the killing was done "after the exercise of reflection and judgment."  T.C.A. § 39-13-202(d); *see Pike*, 978 S.W.2d at 914-15; *Bland*, 958 S.W.2d at 660.

One learned treatise states that premeditation may be inferred from events that occur before and at the time of the killing:

> Three categories of evidence are important for [the] purpose [of inferring premeditation]: (1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.

2 Wayne R. LaFave, *Substantive Criminal Law* § 14.7(a) (2d ed. 2003).

We agree with Appellant that convictions may not be based solely upon the uncorroborated testimony of accomplices. *See State v. Robinson*, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate such testimony. *See State v. Copeland*, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). More specifically, precedent provides that:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must[,] of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

*State v. Griffis*, 964 S.W.2d 577, 588-89 (Tenn. Crim. App. 1997) (quoting *Sherrill v. State*, 321 S.W.2d 811, 815 (Tenn. 1959)). In addition, our courts have stated that:

> The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*Id.* at 589 (footnotes omitted). Furthermore, we note that the question of whether an accomplice's testimony has been sufficiently corroborated is for the jury to determine. *See id.* at 588; *State v. Maddox*, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997).

When the evidence at trial is clear and undisputed that a witness participated in the crime, the trial court is required to declare that witness an accomplice as a matter of law and properly instruct the jury regarding corroboration of accomplice testimony. *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). When the evidence of whether a witness is an accomplice is unclear, however, it becomes a question of fact for the jury to determine whether the witness is an accomplice. *Id.*; *State v. Green*, 915 S.W.2d 827, 831-32 (Tenn.

-7-

Crim. App. 1995). If the jury determines the witness is an accomplice, they must also determine whether there is corroborating evidence to support the witness's testimony. *Id.*

During the trial herein, there was testimony from Officer Scott Bales indicating that Mr. Haden was never charged during the investigation because he was not considered an accomplice. At the conclusion of the testimony and prior to the jury charge, there was discussion as to whether Mr. Haden was an accomplice. The trial court held that the determination of whether Mr. Haden was an accomplice was a question for the jury. The trial court instructed the jury as to their duty as part of the jury instructions, informing the jury if they determined that Mr. Haden was an accomplice, his testimony had to be sufficiently corroborated.

The jury could have determined that Mr. Haden was not an accomplice. If that was the case, then it was unnecessary for his testimony to be corroborated. If the jury determined that Mr. Haden was an accomplice, we conclude that the record contains independent evidence that corroborated his testimony implicating Appellant. Mr. Haden testified that Appellant was involved in the crime and drove a red Pontiac the night of the incident. There were multiple witnesses who testified that they saw a red car following a champagne-colored Expedition after hearing gunshots in the area. Further, Appellant's fingerprints were located in the Expedition near the gunshot residue primer. While "Mr. G" did not recall seeing Appellant at his home that night, he did recall seeing a red Pontiac with at least four passengers inside.

Moreover, in a light most favorable to the State, a rational trier of fact could have found Appellant guilty of first degree murder based on the facts entered into evidence at trial. In the case at hand, the jury concluded that Appellant acted with premeditation when killing the victim. Several of the circumstances listed by our supreme court from which a trier of fact can infer premeditation were present in the facts presented to the jury. Appellant approached Mr. Carter and suggested retaliation against someone for previous incidents and that he was "ready to do these n_____s." Appellant followed Mr. Carter to "Mr. G's" house to get guns, then followed Mr. Carter to the scene of the crime. Appellant exited his car and went over the hill where multiple gunshots were heard, placing himself in the vicinity of the crime. The victim was seemingly unarmed. In addition, immediately after the murder, Appellant got into his car with several other men and rode back to "Mr. G's," where he bragged about the killing, saying that he was responsible for one of them being "dropped." This showed calmness immediately after the shooting. The gun used to commit the crime was not located. "Mr. G" claimed that he gave the "hot" assault rifle to Mr. Carter's father. Also, Appellant's fingerprints were also found on the Expedition near the gunshot residue primer.

-8-

As stated above, the trier of fact determines the credibility of the witnesses, any issues of fact, and the weight to be given the evidence presented at trial. *Pruett*, 788 S.W.2d at 561. The jury clearly found that Appellant acted both intentionally and with premeditation when the victim was shot and discredited Appellant's alibi testimony. We conclude that when the evidence is viewed in a manner that favors the State, there is sufficient evidence to support the jury's verdict with regard to the first degree murder conviction.

*Admission of Bullet Testimony*

Next, Appellant insists that the State failed to establish a proper chain of custody and that the trial court erred in admitting testimony about the bullet found during the autopsy of the victim. Specifically, Appellant argues that the bullet was not properly authenticated under Tennessee Rule of Evidence 901(a) and, as such, the State should not have been allowed to suggest that this was the bullet that killed the victim. The State argues that Appellant waived the issue for failure to present it in a motion for new trial. In the alternative, the State contends that the bullet was not tangible evidence and was not admitted as an exhibit and, therefore, there was no requirement that the bullet be properly authenticated by the State.

At the outset, we note that contrary to the State's assertion, Appellant properly raised this issue in an amended motion for new trial. Specifically, Appellant argued that "[t]he trial court erred in failing to suppress evidence regarding the finding of a bullet and in excluding it from evidence." Additionally, Appellant stated in his motion that the trial court "erred in allowing witness Goolsby to testify RE: when, where, and how the bullet fragment was recovered in the autopsy room."

Prior to trial, Appellant sought to exclude the introduction into evidence of a .223 caliber bullet found during the autopsy of the victim. The trial court reserved ruling on the matter. At trial, Appellant objected to the testimony of Dr. Goolsby about the bullet. Appellant claimed the testimony was hearsay because Dr. Goolsby was not there when the bullet was found and was going to reference a postmortem examination worksheet that was prepared by someone else, Marie McGee, during her testimony about the cause of death. The trial court determined that while the statement was hearsay, it was an exception under Tennessee Rule of Evidence 803(6), records of regularly conducted activity. Further, the trial court noted that Ms. McGee was available to testify and did ultimately testify.

During the testimony of Dr. Goolsby, a picture of the bullet found during the autopsy was entered into evidence for identification purposes. The bullet itself was never admitted into evidence. Dr. Goolsby identified the picture as a picture of the .223 bullet "recovered in the autopsy morgue at about the time that the decedent's clothing was being processed by

the autopsy tech." Specifically, Dr. Goolsby read the following entry in the notes from the autopsy that described the bullet as: "deformed, small-caliber, copper-jacketed, lead bullet." Later on in the notes was this statement: "[t]his bullet was discovered on the floor in the morgue in the area below the body cart where this decedent's clothing was removed from a separate plastic bag to be laid out on a sheet and photographed. It is uncertain which item of clothing contained this bullet." Dr. Goolsby testified that she was unable to make a determination as to whether this bullet killed the victim or from which piece of clothing the bullet came.

Ms. McGee testified that the bullet in question was discovered during the autopsy of the victim. She also explained the cleaning protocol with regard to the morgue. The policy is that the floors are wiped, cleaned, and "squeeged" between every autopsy. In other words, the bullet came from the victim's clothing and was not left behind by another autopsy.

"[T]rial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). Rule 901(a) of the Tennessee Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility [of evidence] is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." The testimony of a witness with knowledge "that a matter is what it is claimed to be" is sufficient. Tenn. R. Evid. 901(b)(1). Once this foundation has been established, the "trier of fact then makes the ultimate decision of whether the item is actually what it purports to be." Neil P. Cohen et al., *Tennessee Law of Evidence* § 9.01[2][a] (5th ed. 2005).

Additionally, as stated correctly by Appellant, before tangible evidence may be introduced, the party offering the evidence must either call a witness who is able to identify the evidence or must establish an unbroken chain of custody. *State v. Holloman*, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992).

In the case herein, the bullet at issue was never actually entered into evidence. In fact, Appellant concedes this in his brief. Therefore, the bullet itself is not tangible evidence, as argued by Appellant, and there was no need for authentication. *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000).

Appellant also complains that the trial court improperly admitted testimony about the bullet. While Appellant challenges the admission of this testimony and claims that the State insisted that this was the bullet that killed the victim, he does not provide legal argument, with the exception to his challenge to the chain of custody, to support his assertions.

Initially, we note that the admissibility of evidence is generally within the broad discretion of the trial court. Absent an abuse of that discretion, the trial court's decision will not be reversed. *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). The rules of evidence provide that "[h]earsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Under Rule 803(6) of the Tennessee Rules of Evidence, a "data compilation" is admissible hearsay if it is made by a person with knowledge and a business duty to record the information. Tenn. R. Evid. 803(6). The statement must be written at or near the time the information was encountered, and it must occur as part of a "regularly conducted business activity." *Id.* This foundation must be laid by a "custodian or other qualified witness." *Id.*

In the case herein, after hearing testimony from Dr. Goolsby outside the presence of the jury, the trial court determined the following:

> [T]he statement by the doctor that "This bullet was discovered on the floor in the morgue in the area below the body cart where the decedent's clothing was removed from a separate plastic bag to be laid out on a sheet and photographed. It is uncertain which item of clothing contained this bullet," that statement itself is a record of regularly conducted activity.
>
> There is hearsay, though, within that statement, which is that this tech told her that the tech - - the tech told the doctor that the tech discovered the bullet and then the doctor made the note about what she was told from the tech. That's hearsay within hearsay under rule 805, . . . .
>
> And the hearsay rule itself does say that "a report of a condition from information transmitted by a person," so if this tech is the person who transmitted the information to the doctor and the doctor makes the report, that falls within the hearsay exception of 803(6).

We conclude that Dr. Goolsby's testimony about the report was admissible under Rule 803(6) of the Tennessee Rules of Evidence. The report was completed during the autopsy and both Dr. Goolsby and Ms. McGee who actually assisted in the autopsy, testified not only about the creation of the report but the discovery of the bullet. There was no error in the admission of testimony concerning the discovery of the bullet in question.

Finally, the State did not, as argued by Appellant, claim that the bullet found during the autopsy was the cause of the victim's death. During closing arguments, the State urged the jury to "use [their] common sense to determine whether . . . that was the bullet that

actually killed [the victim]." The determination of whether that bullet was the one ultimately responsible for the victim's death was a matter left to the jury.

Appellant is not entitled to relief on this issue.

*Denial of Motion for New Trial on the Basis of Newly Discovered Evidence*

Lastly, Appellant claims that the trial court improperly denied the motion for new trial after he presented newly discovered evidence in the form of an affidavit from Co-defendant Eric Carter in which Mr. Carter completely exonerated Appellant in the crime. Appellant claims that if this testimony were available at trial, the result would have been different. The State insists that the trial court properly denied the motion for new trial.

In order to receive a new trial on the ground of newly discovered evidence, a defendant must demonstrate: "(1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence;" and (3) the likelihood that the evidence would change the outcome of the trial. *State v. Nichols*, 877 S.W.2d 722, 737 (Tenn. 1994) (citing *State v. Goswick*, 656 S.W.2d 355, 358-60 (Tenn. 1983)). Additionally, the decision regarding whether to grant or deny a motion for a new trial predicated on newly discovered evidence "rests in the sound discretion of the trial court." *State v. Walker*, 910 S.W.2d 381, 395 (Tenn. 1995). Moreover, the trial court is authorized to ascertain the "'credibility of newly discovered evidence for which the new trial is asked,'" and the motion should be denied unless the court has assured itself that the testimony would be worthy of belief by the jury. *Id.* (quoting *Rosenthal v. State*, 292 S.W.2d 1, 5 (Tenn. 1956)). When it appears that the newly discovered evidence can have no other effect than to "discredit the testimony of a witness at the original trial, contradict a witness' statement or impeach a witness," the trial court should not order a new trial "unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness was so strong and convincing that a different result at trial would necessarily follow." *State v. Rogers*, 703 S.W.2d 166, 169 (Tenn. Crim. App. 1985).

After the conclusion of the trial, defense counsel met with Appellant at the jail. Appellant advised defense counsel that Mr. Carter wanted to meet with counsel to tell the truth about the homicide. Counsel continued the hearing on the motion for new trial in order to meet with Mr. Carter. Defense counsel drafted an affidavit after the meeting. In the affidavit, Mr. Carter claimed that Appellant had nothing to do with the crime. In fact, Mr. Carter claimed that there was a conspiracy between Mr. Haden, Mr. Branham, and Mr. Carter to implicate Appellant as the sole perpetrator of the crime. Mr. Carter did not testify at the hearing. After the hearing on the motion for new trial, the trial court noted that Mr. Carter had essentially made four different statements over the course of three years with regard to

the facts and circumstances of the crime. The trial court determined that Mr. Carter's testimony was "suspect at best and lacks any credibility at worst" because it contradicted what Mr. Carter had subsequently alleged as the factual basis in his petition for post-conviction relief.

The trial court, as stated previously, is in the best position to judge the credibility of the witnesses, and this Court must defer to the trial court's credibility determinations on appeal. *Odom*, 928 S.W.2d at 23. Thus, the trial court did not abuse its discretion in denying the motion for new trial on the basis of newly discovered evidence. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE